With both attorneys, or all the attorneys that are going to argue, please step up to the podium and identify yourselves for the record. Good afternoon, Stephen Gentry from the State Appellate Defender, representing J.S. Good morning, I'm Assistant State's Attorney Ashley Kouza on behalf of the people. Could you state your last name again? Sure. Kouza? Kouza. Yes, Ms. Kouza. All right. Mr. Gentry, Ms. Kouza. Each of you will have about 15 minutes to present argument, and from that, Mr. Gentry, you may save out some time for rebuttal. Thank you. All right. Safe three minutes. Here. Good morning again. My name is Stephen Gentry from the Office of the State Appellate Defender, representing J.S. this morning. Requests from this court strike two conditions of probation, the no gang contact provision and the order that J.S. clears social media of gang, gun, and drug-related content. He asked this under a few different theories. Certainly, this court should act on non-constitutional grounds first, and in that spirit, Mr. J.S. argues that these provisions were an abuse of discretion, encompassing constitutional provisions with regard to both aspects of the order. When you say both aspects, oh, first the contact and then the social media. Correct. All right. And what we have here actually is not just one order, but rather a series of communications from the court. First, the court's earlier order at sentencing demanding that J.S. clear his social media of gang, gun, and drug imagery, including, the court said, even so much as pointing your finger at the camera. The court also said that smoking cigarettes in image of this would cause him to be in violation because the court could not distinguish this from blunts, it said. Counsel, why are we talking about orders that were vacated? What does that have to do with this case? Well, it's, Your Honor, the subsequent two orders, it's unclear how these both relate back to the court's initial statements. And these statements that the court made to J.S. were the opportunity that J.S. had to provide clarification for what would subsequently become the written orders. But didn't she say she was vacating everything? She said she was vacating, her exact words were, minors sentencing restricting gang, guns, and drugs, and the prohibition of their display on social media is hereby vacated. But then the next sentence said, minors shall refrain from illegal gang, guns, and drug activity, and none shall be displayed on his social media. So there's, it's confusing on their face what is different from the first order, from the second order. Well, isn't that word illegal a big difference? Well, the first order, well, she references unlawful in the first order, so it's unclear. And additionally... Well, then what's wrong with that one? Even if we're not really supposed to be looking at it, we're not, but what's wrong with that one that says unlawful? Well, the judge clearly saw, the modification was made after ORF came out, so the judge was attempting to respond to the concerns of ORF. The judge's modification failed to do that. In addition, the judge's modification was to refrain from illegal gang activity. It wasn't no contact with gangs. It was to refrain from illegal activity. Two words that are pretty different than what had come before, right? In the court's initial order, which was the complete conditions of probation, the check box and no gang contact activity. And it's unclear if this subsequent order unchecks that box because it was a future written order rather than a modified version of the first order. So that in itself creates a muddying of the waters for JOS. And additionally, as I was saying, the judge's modification failed to address the concerns of ORF. There, the court stated that it was concerned with the lack of any exceptions for familial, employment, or education relationships and for the failure to adequately define contact. Mr. Gentry, if you were to suggest to us the appropriate order, what would that say? Your Honor, I would start with the language of ORF and say that the order would have to include exceptions for familial, employment, or educational relationships. But why? Why would this order need those exceptions? I understand the argument in OMRF because OMRF said don't have any contact with gang members. And OMRF said, well, what if you go to school with a gang member? What if you work at McDonald's at the fry station next to a gang member? What if a gang member walks up and you take their order at McDonald's? I mean, there's all sorts of ways. But here we're saying no illegal gang activity. Don't we want to discourage illegal gang activity even if it's taking place in school, even if it's taking place at work or within the family home? Absolutely, Your Honor. So why would there need to be exceptions? We have certainly no disagreement that the State has a compelling interest in curtailing gang activity among juveniles adjudicated to delinquent. The question is the narrative. And the Court's order here, certainly all probationers are precluded from engaging in illegal activity. Could I interrupt you for one moment? If we erased everything before this subsequent order, and we'll assume with this scenario that there was no questioning by the respondent, the Court never entered the other order, okay? Erase that from your mind. If we focus on what she eventually ordered, okay, without any history, would that be defective? Well, as to the no participating in illegal activity, certainly that's already a part of any probation order. Right, but would the order be defective if it said no illegal gang contact, activity, no guns? I mean, that doesn't need to be illegal. He's under 21, right? And then the third one was about drugs. Drugs. Yeah, that's bad for all. So there doesn't have to be this copyright about it being illegal, okay? I think there's enough there. So would that, and I'm not talking about the social media aspect, right? Okay. Just those three things, would that pass muster? I think so, yes, Your Honor. Okay. Where it's confusing is how it relates back to, and again, I want to point out that that subsequent order, and certainly while counsel waived J.S.'s appearance, J.S. was not in court to be able to ask any kind of clarifying questions of the judge, unfortunately. Does the social media second part of the, when she said, I'm throwing out that old one, bringing in the new, did she also attach with the social media any words about illegal? The social media aspect of that order appears to relate back to the word, the behavior modified by the word illegal. What does it say about, what did you tell him about? Social media, after her. After saying, mine shall refrain from all illegal gang guns and drug activity, the order says, and none shall be displayed on his social media. Okay. So doesn't that relate to that none of the illegal gang activity, drugs and guns, shall be displayed? Isn't that what her order says? It is, Your Honor, but to the extent that the judge had previously explained what she meant by these things, and that these explanations had included things like pointing one's finger at the camera and smoking cigarettes, to that extent it is certainly overbroad and does not. Is that an evasion to smoke cigarettes? It will be for this order. Evasion, hence? That's correct. Can a court, though, bar smoking? Don't they do that sometimes with alcohol, people that have had DUIs and they say, you know what, no more drinking for you, missy, or you, sir. You've had too much booze, you've caused too much trouble, so we're not going to let you drink anymore. Can a court do that with a minor and say, you know what, smoking is really bad for you, too, and I don't want you smoking, at least until the probation is over? Well, honestly, I have not researched that. I would imagine, and I'm not familiar with any instances where a court has done that. But on the other hand, I can imagine a situation, certainly, Illinois is now a medical marijuana state, and it's certainly possible that he might obtain a prescription. Sure, but then you're not talking about illegal drug use, are you? No, but relating back to the judge's comments, the only guidance that he really has for interpreting the written orders, either of them, certainly the judge was impressing upon him an overly broad interpretation of its orders. Well, with the one thing about pointing the finger, you know, I don't even want to see you pointing a finger. Would that alone be a reason for us to reverse and vacate everything that was gone before or that came after? That alone demonstrates that JS is operating under an overly broad condition of probation. Well, it's one thing to say that the juvenile lives in a constant state of uncertainty as to what the law says or not. It's another thing to say that saying you can't do this is going too far, right? Those are two different constitutional concepts, right? Those are two different arguments. I mean, we allow curtailment of constitutional rights of probationers, don't we, especially juvenile probationers, particularly juvenile probationers. No retailer going to us. Yeah, but I mean, we allow them to be denied some of their rights. You can't go too far, but we, you know, the courts have never held that you can't do anything. It's a probation. I mean, if this guy wants to go into juvenile detention, he's welcome to do so. This is his ticket to stay out, and he can take except some curtailment. I mean, is that a huge curtailment of his rights that he can't point a finger gun at a camera and take a picture and post it on Facebook? Is that just some huge deprivation of his First Amendment rights? It doesn't seem like it is. Well, Your Honor, it is, and it goes to the point of it simply being so broad. I mean, there's – Under her subsequent order, okay, which is definitely in place, which if you interpret it as none relating back to the foregone, do you really believe that under that order, if he pointed his finger, he's violating the probation order? I mean, if you accept that she had a new order, and the new order said, redundantly or not, no illegal gang contact, no drugs, no – what's the other one? Guns. Okay? And none of that illegal activity shall be displayed on your social media. Is there really – I mean, would this pointing your finger actually be a violation of that order? Because I don't really see how that is illegal for him to, you know, do something like that. She obviously didn't want him doing that at all. I agree. If the record was clear that pointing the finger was not a part of the subsequent order, that would be a much – there would not be the vagueness issue that we're dealing with here. But your whole premise is that the second order is vague because she didn't really clean it up enough. Another reason why it's vague is because probation was being precluded from engaging in illegal activity, presumably by the judge adding this additional provision, was seeking to add some sort of additional restriction on him. And it goes back to – Wasn't what she was trying to do trying to not make – to narrow the order? Isn't that what she was doing? Yes. So it did appear that way. She was actually putting less restrictions on him. It appeared like that, but my argument is, number one, that it failed to clarify in the context of the previous dialogue, and also that it failed to address the concerns of OMRF. But if it did clarify it, would you concede that you've got a problem? I'm arguing that it's too vague. So certainly if it was less vague, that would be the decision. You know, there is a big difference about juveniles and gang contact because of the nature of gang activity and youth. And, you know, all these things we read about, how they're much more vulnerable, they're more impressionable. And so gang-related activity can have a greater emphasis on their activities than, say, you know, a 35-year-old who's charged with armed robbery. And the condition, you know, he's not getting probation. He has to go for a minimum. But my point is, is that there's a big difference with this whole notion of trying to curtail gang activity with a juvenile to prevent and to hopefully, you know, move them in the right direction instead of going backwards. So the statute in itself allows for the language that was used initially. Well, your point about juveniles being vulnerable to gang activity is well taken. And the argument here is that J.S. is vulnerable as well under this current order to overzealous interpretation of an order that is lacking the clarification requested that these orders provide specific exceptions for family, employment, and education. You want him to be able to engage in illegal gang activity at work and school. That's what you want the exception to say? No, Your Honor. It has to be illegal gang activity first. So what exceptions do you want to illegal gang activity? Your Honor, if this Court can clarify that the original order that checked no gang contact activity has been unchecked. It wasn't illegal. The one with illegal. She vacated it, right? She did. She issued a separate written order. The original order, and it's not clear exactly what is being changed from the original order because a modified order was never issued. Let me see if I've got this straight. We've got what she said to your client in open court. Correct. We've got a box she checked, and then we've got words she wrote next to the box. Correct. Okay. We know what she said. The box she checked says what? No gang contact or activity? Correct. And then she wrote, the first time around, no gangs, guns, or drugs, and none including social media. Is that? So close, Your Honor. The words that were written in on the first order were unlawful activity or its promotion. Okay. And so then she says, I'm vacating my what? My gangs, guns, and drugs contact? And the prohibition of their display on social media is vacated. Okay. But then the next sentence is almost the exact same sentence with the addition of the word illegal. And activity. And activity. So at worst, so she clearly at least vacated what she wrote previously, what she wrote in or somebody wrote in, and the box she checked is probably redundant with the box that she checked. The worst thing you can say is that she kind of said the same thing twice, which is not usually a constitutional problem. It's the thing that she said that's really hanging you up, right? The box seems to indicate that any gang contact at all, whether it involved otherwise illegal activity, would be considered illegal. And so that? Yeah. So when she vacated her order and entered a new word, you're saying it's unclear to us whether she walked back everything she said to him. Correct. Okay. Does the? When you have a written probation order, it's a certificate, isn't that what they call it? It becomes a certificate that the probationer can take with them? That's where all this stuff is written. Correct. What controls if you have a discrepancy between a written order and what the judge said to you when it comes to juvenile probation? Do you know? It would be the written order. The written order. I mean, when you sentence an adult, I believe it's the opposite, right? Correct. But here it's a matter of, I mean, when it's being reduced to the written order, I mean, that's what they're going by. I think that the judge. Is there a case law that answers this question? Not that I have access to right now, Your Honor. Okay. But it would appear in this case that the judge was explaining how the written order, was trying to provide guidance to how the written order would be interpreted. But certainly the judge has gone in the exact opposite direction after the initial. Did she say anything the second time? Post OMRF when she issued this? She recalled him, right? She waived the appearance of the respondent, or his counsel did. Right. I don't think there was any other clarification that was offered. That's what she wrote. Okay. Anything further? We're going to give you some more time for rebuttals. Thank you, Your Honor. Ms. Cusa? Again, Assistant State's Attorney Ashley Cusa on behalf of the people. Did the first order actually say unlawful conduct? No, it just prohibited contact with gangs, guns, or drugs. So there wasn't this word unlawful in it? What was the box? What did the box say? It's a form, and the box says no contact with gangs, guns, or drugs. Oh, the other one just says there's another box for that you're not supposed to commit any crimes, right? There's a box that the judge checked, and then she also, I believe, hand wrote an inscription that was referred to before that was limiting his unlawful activity or its promotion, which was referencing the social media restriction. Oh, okay. So that was, in the first order, that was actually described as unlawful social media activity? Correct. Okay. All right. So the problems with counsel's as-applied challenge that he's presented mirror the flaw of legal analysis set forth in Omar F., and he argues that the minor's probation conditions were unconstitutional as applied to him, but he cannot establish what the minor's specific circumstances actually were. And what's more is, you all have pointed out, the order in this case prohibits only illegal gang activity, and the minor here cannot establish any legitimate reason why he would need to engage in illegal gang activity. What's the status of both the Judge Hyman case and the Judge Smith case? Did they, no PLAs, nothing, any, they were both PLA denied? Or maybe there wasn't even a petition. I believe there is not in his oral position today that Omar F. was in error. Yes. It was wrongly decided. Yes, it was wrongly decided in the holding, and R.H. is correct. Okay. And that's because with, in Omar F., just as in the present case, with respect to as-applied constitutional challenges, a reviewing court can only consider the facts that are before it, that are on the record, not any hypothetical facts under which this statute might be unconstitutional. And that's why individuals, the law requires individuals like this minor who are presenting these as-applied constitutional analysis to first address the issue with the trial court so that the facts can be thoroughly established and fleshed out below before the matter is brought up to this court on appeal. And because the minor has failed to do so here, the juvenile court, like I said, was never informed of any reason why this minor would need to engage in illegal gang activity. And therefore, this court never had the opportunity to carve out special exceptions to this minor's unique circumstances. So in essence, this minor has bypassed proper procedure and now asks this court to strike the conditions of his probation based on some imaginary circumstances. And this is an improper, not a valid constitutional analysis because without an evidentiary record, his as-applied challenge is premature. Doesn't the written document that she signed control, I mean, aren't those really the actual conditions of his probation that he was given in open court? Well, he wasn't there that day when she modified it, but isn't that the, isn't that what is binding here? The document that would be controlling is the last one that was entered by the court. And that order, I have a copy of it here if you need to see it, it specifically vacates the prior orders with respect to both restrictions. Yeah, it's in the record, isn't it? I'm sorry? The order vacating the other order? Yes, it is. It says that on the order and she says it in her oral ruling. And there is no discrepancy between her oral ruling at that hearing and the order. But if there was, of course, we would always rely, case law tells us we have to rely on what she said in the hearing. So why was the case wrongly decided? Omar F.? Yes. It was because of that flawed legal analysis. In Omar F., the court struck down the minor's conditions of his probation because, because they were. He had a brother that was in a gang, didn't he? No. And that was the problem. There was absolutely no evidence in the Omar F. record that his brother was a member of a gang. But the opinion suggests that, doesn't it? Exactly. And that's the problem. If there had been, if that had been established below, then we would be looking at an entirely different situation than what presented this hearing. I guess that was in the social investigation report. They referred to the social investigation, and we're talking Omar F. Omar F. About his brother and said that his brother had a criminal history. And then speculated from that criminal history that, well, maybe perhaps he could be a member of a gang. And so that's the problem with Omar F.'s analysis. It didn't, as applied, talking about that minor's own circumstances. They said that that was what made it particularly troubling. But they said right before that just the fact that it could put this guy in a trick box, right? That was a concrete example, but they didn't base it all on his brother. They said it puts a reasonable person in a complete minefield, not knowing when they're going to even accidentally violate the probation order. And that's part of the flawed legal analysis. And what it focused on here is it said there were no exceptions for this minor to engage with his family, at his school, at his workplace, if someone happened to be a member of a gang, without any evidentiary evidence that there were any gang members in any of those places or that he had any reason to legitimately contact individuals who are members of a gang in that context. And so that is the problem. Because if we look at this in the proper, under the proper constitutional analysis here, I've explained why, in this case, just like in Omar F., because the facts are, in fact, similar, the as-applied challenge fails. And if we look at what he's done here is he's framed his arguments, this minor, just like the minor in Omar F., framed his arguments in a manner that sounds like an over-breath challenge to the facial validity of a statute. And that's because when we talk about the facial validity of a statute, we're allowed to look at the statute in the context of all of its applications, including hypotheticals. But the facial challenge fails here for two reasons. First, we know that if there are valid applications of the statute, then it's not facially invalid. And this court has held that this exact order, this order that comports with Section 5-715, has numerous valid applications because we know, and the legislature knows, there is no more compelling reason than to keep a child who's been adjudicated delinquent away from a criminal enterprise that exploits those very children to do their violent felonies. And we also know in this particular case, this minor's facial challenge can't stand either because where the restriction inhibits, in a facial challenge, this restriction has to inhibit a constitutionally protected right. We don't have that here. The minor has no constitutionally protected right to be a member of a gang, and he most certainly has no constitutionally protected right to engage in illegal gang activity. So on a facial, under a facial analysis, this fails as well as far as over-breath is concerned. And if we're looking at this under the lens of vagueness, which has also been alleged, the as-applied problem rears its head yet again because to prevail in a vagueness challenge, the restriction, to a restriction that doesn't implicate constitutional rights, the movement has to demonstrate that the restriction was vague, as applied to the conduct for which the movement was prosecuted. There's no violation of probation here. The record is incomplete. He has no, this matter simply isn't justiciable before the court on that basis. So the only thing then in this analysis that we're left with is whether this minor has a valid challenge to the order under a facial challenge to vagueness. So if we're looking at this, is this facially vague, the answer to that question is no. Well, has the question ever come up before, and I don't mean in the Omar and Young case, whether this terminology, you know, the statute or the condition that's allowed is to refrain from having any contact directly or indirectly with certain specified persons or particular types of persons, including but not limited to members of street gangs. I mean, has this been challenged before that, you know, what does member of a street gang mean? Does it have a meaning that is specific enough? In Illinois, I'm not aware of any situation where this particular statute has been challenged, and for good reason, because this statute is overwhelmingly clear. There's absolutely no question what the terms of this statute mean. When you have a no contact order with a specific person, which we often have in like domestic violence cases, you know, it's clear, you can't have contact with John Jacob, okay? You know, so there's no real problem there. That means you can't have any contact. Now, when you say you can't have any contact with gangs, there's a little bit of a difference there, isn't there? There certainly is a difference in the context of the minor's association, his connection with these gang members is just inherently dangerous. Even standing with a group of gang members on a corner puts this minor in danger, because we know that children like J.S. are killed every single day just for associating and being around members of, you know, rival gangs. This is inherently dangerous to be around a gang. And it's also important to remember that when we're talking about violations of probation, we can't look at that under the same lens that we would look at a criminal statute under, because when it comes to violations of probation, even non-culpable conduct. Is there really an available challenge right now when you haven't actually been impacted? Exactly. And that's exactly the point.  Like, don't you have to be impacted? Doesn't the probationer actually have to have an injury? Is there really an injury here? But if you don't challenge it, do we address it? Exactly. That's exactly the point of the association. Do we address it? I believe, yes, it is in my brief. I do need to make it more clear, and that's what I'm trying to do today, now that we've narrowed the issue and we understand the problem. It was very confusing for me because of sort of this mixed analysis that I found in the minor's brief to figure out exactly how he was challenging the statute, but you're exactly right. There's been no injury. There's been no harm. I thought there has to be some kind of injury, claiming that, you know, the order right now. I've actually been hauled in now on a violation. Now, if that were the case and there was an actual issue, like, you know, he pointed his finger and now he's being hauled in, you know, we would definitely have a direct injury to be addressed. Absolutely. But in this instance, he hasn't been violated. There is no claim that he's going to be violated, and I don't even know if that's enough. But I thought you usually have to have a basis for challenging an order because it directly impacts you and you've already been injured. And that's why his vagueness challenge, as applied, fails. As applied to what, the order or the statute? Both. Both. Both are very different things. Well, it does, in fact, comport with the statute, and there's been no – there is no suggestion from any case law or anybody that the statute is unconstitutional. So when I refer interchangeably, I apologize. But, yes, in this case, we are specifically talking about the order, but I refer to both because it does, in fact, comport, and there's been no finding or no suggestion that the statute itself is unconstitutional, which is, in fact, broader than the specific restriction we have here. And as I pointed out before, and I want to acknowledge again, the order here is almost unnecessarily narrow because it's prohibiting the minor from engaging in illegal conduct, which, as you suggested, is already a violation of his probation. And what's happened is this is a result of Omar F.'s flawed analysis. The Court heard about Omar F., recalled the case, and tried to apply the analysis in Omar F., and we ended up with an order that is not carefully crafted to design a specific circumstance. Okay. So now I ask Mr. Gentry what he would do. What would you say would carefully craft an order? What would be the language that the Court should use? I'll answer that depends because this minor, the movant, the one who bears the burden of showing unconstitutionality, must raise issues and facts before the trial court so that the court has the knowledge and information that it needs to carefully craft an order that will help the minor succeed in his probation and reach the goals of his probation. Yes, so what should that kind of an order say? Is your argument simply that it should just follow the language of the statute and we'll all be okay?  Or should it be more tailored? It should be tailored. What I'm saying today is based on the facts that are before this court, we have a pre-sentence social investigation report. This judge engaged in a very, very lengthy discussion with the minor about his employment with Applebee's, encouraging him to keep working at Applebee's, to go up the corporate ladder at Applebee's, and in doing so actually crafted exceptions to accommodate the minor's work. So she said, I'm not going to order you to participate in community service like I normally would because you're working. So I would rather you go to work than do this community service. And she made him a special exception to his 8 p.m. curfew, saying, you know what? If you are working at Applebee's, I'm going to let you stay out after 8 p.m. And that's a perfect example of information that only this minor has. And until this minor informs the court of the facts, warranting an exception, the juvenile court's hands are tied. So what we see here is an order that was the resulting order is obviously valid. It stands as it is. But my position and what I want to emphasize to you today is the statute, which doesn't require illegal, the order to say illegal gang activity, is also constitutionally valid. The statute doesn't require anything, right? It's just a permissive statute. Just as the judge wants to, they can impose a statute that covers this topic. It doesn't require specific language. It doesn't require its imposition at all. Correct. Correct. So as I said before, Minor here has limited his as-applied, his argument to an as-applied challenge and ignores the current probation order in place that restricts only his illegal gang activity. And, in fact, Minor concedes on page 8 of his reply brief that if the trial court had banished the Minor from associating in gang-related criminal activity, his challenges on these grounds would likely fail. And he's right because there's no constitutional merit to the Minor's as-applied arguments, especially in this present case. So one more time, and bear with me, Justice Ellis and Justice Gordon, I just want to emphasize that the Minor here has the ability and the means by which to return to the juvenile court to establish any facts and make the gang restriction unconstitutional as applied to him. But until he does so, the record fails to support his claims and his as-applied constitutional challenge is premature. We can't expect the juvenile court to carve out exceptions to the Minor's conditions of probation unless, if the Minor fails to inform the juvenile court of the facts warranting such exceptions. Well, I think both of you would agree, then, that if someone were to come up with a decent order that everyone would be happy with, it would say that the trial court should enter an order prohibiting the respondent, the juvenile, from associating or participating in gang-related criminal activity, which, of course, is sort of redundant again anyway. But it clears up what the contact means. It also says that the gang-related activity has to be criminal. Okay. I agree. And I do agree that that would be best practice. You can translate that to the other assistants and the public defenders in the juvenile court that here's a good way to resolve this issue that seems to be troubling. I can assure you that our office is on it, Your Honor. So for these reasons and those stated in the people's brief, we ask that you affirm the Minor's sentencing order.  So you have kind of proposed the language that should be used, kind of associating and not participating in. I agree, Your Honor. This can be cleaned up, and I appreciate that the State concedes that the order was not carefully crafted previously. I just want to clarify, in this case, it was the final order which seemed to wipe out, to the extent that it seemed to wipe out any of its prior oral announcements that would lean towards it taking precedence over that, but to the extent that it's not clear in that order what was different about it to JS insofar as it, as the word illegal, replacing the word unlawful, as the State acknowledged as in the original order, it still remains unclear whether the box that was checked for no gang contact or activity unmodified still remains in effect. And for these reasons, as stated in the briefs, JS requests that this Court vacate their request that the conditions be modified. Thank you, Mr. Jeffrey. Mr. Cruzzo, the case was well-argued and well-briefed, and we will take it under advisement.